### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | |
|---|---|
| **SYLVAIN A. MAGGARD, ETC.,** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM ORDER** |
| ) | Case No.: 2:12cv00031 |
| **ESSAR GLOBAL LIMITED, et al.,** ) | |
| Defendants. ) | |
| ) | |

This case is before the undersigned on the Defendants' Motion For A Protective Order, (Docket Item No. 68), Non-Party Movant Rewant Ruia's Motion To Quash, (Docket Item No. 90), and Plaintiff Sylvain A. Maggard's Motion For Sanctions, (Docket Item No. 96), ("Motions"). A hearing on the Motions was held before the undersigned by telephone conference call on November 14, 2013. Based on the arguments and representations of counsel, and based on the reasoning stated herein, the Motion for Protective Order is denied, the Motion to Quash is granted in part and denied in part, and the Motion for Sanctions is granted.

### I.    Facts

The plaintiff, Sylvain A. Maggard d/b/a Orleans Management Group, LLC, ("Maggard"), has filed suit in this court alleging that the defendants owe him an $8.6 million commission for services rendered as a "Coal Consultant" in connection with the acquisition of Trinity Coal Company in April 2010. Maggard alleges that he entered into an oral agreement with Madhu Vuppuluri in June 2009 which obligated one of the defendants to pay him millions of dollars upon the

closing of the deal. According to the Amended Complaint, Maggard states that, in the course of providing consulting services, he interacted with Ravi Ruia and Rewant Ruia.

Ravi Ruia is a resident of Mauritius and a citizen of India, and Rewant Ruia is a resident of the United Arab Emirates and a citizen of India. At a September 3, 2013, hearing, the court directed the parties to agree on dates for depositions and, if necessary, for defendants to raise any objections to producing witnesses during those dates on the grounds that they are not within the defendants' control to produce. On September 9, 2013, the court issued an order addressing certain aspects of a motion to compel filed by Maggard, including dates by which the defendants were required to respond to certain discovery. This order does not address depositions or deadlines for raising or resolving disputes about depositions. Regarding the filing of this Motion for Protective Order, Maggard has not issued any deposition notices for Ravi or Rewant Ruia. On September 11, 2013, Maggard's counsel contacted defense counsel requesting that the defendants produce Ravi and Rewant Ruia for depositions during the week of October 28, 2013. However, on September 16, 2013, the defendants informed Maggard that they were not obligated to produce Ravi and Rewant Ruia pursuant to a Rule 30(b) notice.

## II. Analysis

### A. *Motion for Protective Order*

When a party to litigation is a corporation, notice of deposition must be given to it pursuant to Federal Rules of Civil Procedure Rule 30(b)(6). *See In re Honda*

*Am. Motor Co., Inc. Dealership Relations Litig.*, 168 F.R.D. 535, 540 (D. Md. 1996). Rule 30(b)(6) permits two separate means for obtaining deposition testimony from an organization that is a party to a litigation. First, it may notice the corporation alone, and the corporation must designate who will speak on its behalf. *See Honda*, 168 F.R.D. at 540 (citing FED. R. CIV. P. 30(b)(6)). Second, the examining party itself may designate deponents to speak for the corporation, but only if the named individuals are "directors, officers, or managing agents." *Honda*, 168 F.R.D. at 540 (citing FED. R. CIV. P. 30(b)(6)). During the November 14, 2013, telephone conference call, the parties agreed that the issue on this motion is whether Ravi and/or Rewant Ruia are "managing agents" of any of the defendants.

The determination of whether an individual is a "managing agent" of a corporation must be made at the time of the deposition. *See Honda*, 168 F.R.D. at 540 (citing *Curry v. States Marine Corp. of Del.*, 16 F.R.D. 376, 377 (S.D.N.Y. 1954)). The burden of proving that an individual qualifies as a managing agent rests with the party seeking discovery, and doubts about an individual's status as such at the pre-trial discovery stage are resolved in favor of the examining party. *See Honda*, 168 F.R.D. at 540 (citing *Founding Church of Scientology of Wash., D.C. v. Webster*, 802 F.2d 1448, 1452 n.4 (D.C. Cir. 1986)). If an examining party fails to meet its burden of showing that an individual is, in fact, a managing agent, then it must resort to Federal Rules of Civil Procedure Rule 45 for subpoenas on nonparty witnesses. *See Honda*, 168 F.R.D. at 540 (citing *United States v. Afram Lines (U.S.A.), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)).

Courts have held that the test for determining who may be properly designated a managing agent must be a functional one, and the determination must be made on a

case-by-case basis. *See Honda*, 168 F.R.D. at 540 (citing *Webster*, 802 F.2d at 1452). Nonetheless, some of the controlling factors that courts generally agree are used in deciding whether an individual is a managing agent of a corporation include: (1) whether the corporation has invested the person with discretion to exercise his judgment; (2) whether the employee can be depended upon to carry out the employer's directions; and (3) whether the individual can be expected to identify himself or herself with the interests of the corporation as opposed to the interests of the adverse party. *See Honda*, 168 F.R.D. at 540 (citing *Reed Paper Co. v. Proctor & Gamble Distrib. Co.*, 144 F.R.D. 2, 4 (D. Me. 1992); *Colonial Capital Co. v. Gen. Motors Corp.*, 29 F.R.D. 514, 516-17 (D. Conn. 1961); *see also Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985); *Afram Lines*, 159 F.R.D. at 413; *Indep. Prods. Corp. v. Loew's, Inc.*, 24 F.R.D. 19, 25 (S.D.N.Y. 1959)). The district court in *Honda* also noted "other factors to consider," including (1) the degree of supervisory authority which a person is subject to in a given area; and (2) the general responsibilities of the individual regarding the matters at issue in the litigation. 168 F.R.D. at 540-41 (citing *Sugarhill*, 105 F.R.D. at 170.). However, "[t]he 'paramount test' is whether the individual can be expected to identify with the corporation's interests as opposed to an adversary's." *Honda*, 168 F.R.D. at 541.

The defendants base their argument that Ravi and Rewant Ruia are not subject to Rule 30(b) notice and must be subpoenaed under Rule 45, on the affidavit testimony of Madhu Vuppuluri.[1] Vuppuluri testified that neither Ravi nor Rewant Ruia is currently an officer, director or employee of Essar, Inc., which was

---

[1] Vuppuluri is the Chief Executive Officer and Governor of Essar Steel Minnesota LLC; director of Essar Steel Algoma, Inc; President, Chief Executive Officer and sole director of Essar Americas, Inc; and President, Secretary and director of Essar Minerals, Inc.

renamed Essar Americas, Inc., on September 24, 2009; Essar Americas, Inc; Essar Minerals, Inc.; Essar Steel Algoma, Inc.; or Essar Steel Minnesota, LLC.  (Docket Item No. 71, ("Vuppuluri Declaration"), at 2, 3).  He stated that Ravi Ruia served as a director of Essar Global Limited from September 20, 2005, to July 3, 2009, and again from April 5, 2010, to March 26, 2012. (Vuppuluri Declaration at 2). He stated that Ravi Ruia also served as a director of Essar Steel Algoma, Inc., from June 23, 2007, to March 23, 2011.  (Vuppuluri Declaration at 2).  Vuppuluri testified that he had confirmed with the corporate secretary of Essar Global Fund Limited that the ultimate shareholders of the defendants are discretionary trusts, whose beneficiaries include, among others, companies, whose 100 percent shareholders are Ravi and Rewant Ruia. (Vuppuluri Declaration at 2).  He testified that he also had confirmed with the corporate secretary of Essar Global Fund Limited that Rewant Ruia is not currently an officer, director or employee of that company.  (Vuppuluri Declaration at 3).  However, Vuppuluri testified that Rewant Ruia was a director of Essar Steel Minnesota, LLC, from November 2, 2010, to February 21, 2012, and he was a director of Essar Steel Algoma, Inc., from January 1, 2012, through March 26, 2012.  (Vuppuluri Declaration at 3).  He testified that Rewant Ruia's task of overseeing Essar's North American's operations, including Essar Steel Algoma was during the time Rewant Ruia served as director of Essar Steel Minnesota, LLC, and Essar Steel Algoma, Inc.,  (Vuppuluri Declaration at 3-4).  Vuppuluri testified that neither Ravi nor Rewant has corporate authority to take any actions on behalf of any of the defendants to bind them contractually or legally.  (Vuppuluri Declaration at 3, 4).  He stated that the Essar group of companies is not a legal entity.  (Vuppuluri Declaration at 3).

On the other hand, Maggard has offered evidence of multiple instances in which Ravi and Rewant Ruia have held themselves out as controlling the defendants.  In

particular, Maggard asserts that Ravi Ruia held himself out as Vice Chairman of the Essar Group, and Rewant Ruia held himself out as a director of the Essar Group. In support of these assertions, Maggard has offered a screenshot of Essar's website,[2] dated May 12, 2013, showing its Board of Directors. (Exhibit K to Docket Item No. 81). This screenshot lists Ravi Ruia as the Vice Chairman of the Essar Group, and it lists Rewant Ruia as a Promoter Director of the Essar Group. (Exhibit K to Docket Item No. 81). In an Essar Group profile of Ravi Ruia, dated August 25, 2012, it is stated that he is Vice Chairman of the Essar Group and that he has "overseen the Group's globalization plans," including leading "the recent acquisitions of … Trinity Coal in the USA." (Exhibit L to Docket Item No. 81). Rewant Ruia's Essar Group profile, also dated August 25, 2012, lists him as Director of the Essar Group, and it specifically states that he is a "Director on the Board of Major Companies of the Essar Group." (Exhibit M to Docket Item No. 81). It states that he "presently oversees Essar's Steel, Minerals and Retail businesses. Responsible for Essar Group's North America operations which span the US and Canada, he manages Essar Steel Algoma, Trinity Coal Company, Iron Ore Mines & Pellet Project in Minnesota." (Exhibit M to Docket Item No. 81). More recently, an October 1, 2013, livemint[3] report states that Ravi Ruia and his brother Shashikant Ruia lead the Essar Group. (Exhibit R to Docket Item No. 81). Another livemint report, this one dated March 10, 2013, describes Rewant Ruia as overseeing Essar Group's North American metals and mining operations in the U.S. and Canada, and further describes him as head of North American operations, which includes managing Essar Steel Algoma, Inc., Trinity Coal Co. and the Iron

---

[2] While this screenshot contains references to "Essar Group," "Essar Foundation," "Essar Oil, Ltd." and other Essar-related entities, the actual URL is simply www.essar.com.

[3] livemint is an online publication of Mint, an Indian business news publication affiliated with the Wall Street Journal.

Ore Mines and Pellet Project in Minnesota for Essar Steel Minnesota, LLC. (Exhibit S to Docket Item No. 81). Lastly, and most recently, Rewant Ruia's LinkedIn profile, dated October 11, 2013, states that Rewant Ruia has been a director at Essar from "2005-Present." (Exhibit T to Docket Item No. 81).

Although the defendants have offered affidavit testimony stating that Ravi and Rewant Ruia are not currently officers, directors or employees of any of the defendants, I find that Maggard has produced sufficient evidence to support a finding at this pretrial discovery stage that Ravi and Rewant Ruia are "managing agents." Multiple online sources, some belonging to Essar and some not, have held Ravi and Rewant Ruia out to be Vice Chairman and Promoter Director, respectively, at or near the relevant time. These sources also evidence that these men had a great amount of control over at least some of the defendants in this case. As stated previously, the paramount test is whether the individual can be expected to identify with the corporation's interests as opposed to an adversary's. *See Honda*, 168 F.R.D. at 541. I find that there can be no doubt in this case that Ravi Ruia's and Rewant Ruia's interests are closely aligned with the defendants' interests as opposed to an adversary's. The exhibits provided by Maggard demonstrate that the group of defendant companies is a closely run family business. Even assuming that Ravi and Rewant Ruia no longer hold the positions of Vice Chairman and Promoter Director, each man has unquestionably held high-ranking positions within the corporation. According to the exhibits, Ravi Ruia and his brother founded the corporation, and Rewant Ruia has played a large role in the business, as set forth above. Also, just as in the *Honda* case, I find that there is no reason to suspect that what either Ravi or Rewant Ruia might say at deposition will not be closely identified with, and in furtherance of, the interests of the defendants. Additionally, the defendants have offered no evidence that either Ravi or Rewant

Ruia is no longer loyal to the corporation or does not still identify with its interests. *See Honda*, 168 F.R.D. at 541.

In addition to all of the above, it is worth reiterating that to the extent that there are doubts about Ravi Ruia's and Rewant Ruia's statuses as managing agents, these must be resolved in favor of the examining party at the pretrial discovery stage. All of this being the case, I find that Maggard has sufficiently shown, for purposes of this Motion for Protective Order, that Ravi and Rewant Ruia are managing agents of some combination of the defendants and are subject to Rule 30(b) notice. *See Honda*, 168 F.R.D. at 540 (citing *Webster*, 802 F.2d at 1452 n.4).

Maggard requests that Ravi Ruia's and Rewant Ruia's depositions occur in New York, where Essar Global's counsel is located.[4] There is an initial presumption that the deposition of a corporation through its agents or officers normally should be taken in the district of the corporation's principal place of business, but this presumption may be overcome by other factors. *See Rapoca Energy Co., L.P. v. AMCI Export Corp.*, 199 F.R.D. 191, 192 (W.D. Va. 2001). According to the Amended Complaint, Essar, Inc.; Essar Americas, Inc.; Essar Minerals, Inc.; and Essar Steel Algoma, Inc., USA, all have principal places of business in New York. Thus, the majority of the defendants in this case have principal places of business in New York. Other factors to consider include (1) location of counsel for the parties in the forum district; (2) the number of corporate representatives a party is seeking to depose; (3) the likelihood of significant discovery disputes arising which would necessitate resolution by the forum court;

---

[4] Since the filing of this Motion for Protective Order, this counsel has been terminated, and no defense counsel located in New York remain. The most recent termination of New York counsel occurred on November 8, 2013.

(4) whether the persons sought to be deposed often engage in travel for business purposes; (5) whether the defendant has filed a permissive counterclaim; and (6) the equities with regard to the nature of the claim and the parties' relationship. *See Rapoca Energy*, 199 F.R.D. at 193 (citing *Armsey v. Medshares Mgmt. Servs., Inc.*, 184 F.R.D. 569, 571-72 (W.D. Va. 1998)). Maggard states that he is seeking to depose only key Essar individuals, including Ravi Ruia, Rewant Ruia, Vuppuluri, Karan Ahluwalia and Marie Bos, in addition to one or two more who may come to light during the first round of depositions. Thus, there is not a significant number of corporate representatives sought to be deposed, and the current Motion for Protective Order deals only with two. I agree with Maggard that, given the history of this case, there could be discovery disputes during the course of the depositions. Maggard has filed a previous motion to compel which was granted, but which the defendants objected to. He now is fighting this Motion for Protective Order. As Maggard argues, it undoubtedly would be easier to access a court within the same time zone as where the depositions are occurring should the need arise. As for travel to the United States, the Amended Complaint alleges that Ravi and Rewant Ruia traveled to the United States, including Virginia, West Virginia and New York by way of Essar's corporate jet. Moreover, Essar is described as a multinational corporation, having operations in more than 25 countries.

For the above-stated reasons, I find that the presumption of holding depositions in the district of the corporation's principal place of business is not overcome by any of the factors listed above. In fact, these factors serve to strengthen Maggard's position. That being the case, I find that the depositions of Ravi and Rewant Ruia may be taken in New York. However, I further find that if counsel wish to agree to take their depositions in Virginia, where current defense counsel is located, they may do so.

### B. *Motion for Sanctions*

Maggard has filed a Motion for Sanctions, (Docket Item No. 96), based on the defendants' alleged failure to comply with this court's October 3, 2013, order, (Docket Item No. 79), compelling the defendants to produce within 14 days of the entry of a confidentiality waiver:

> any briefs from *Great Lakes* filed under seal by the Essar entities that relate to the Essar entities' corporate structure and the relationship between the entities, provided that the plaintiff first secures an agreement in writing by counsel for the plaintiff in *Great Lakes* waiving any confidentiality as to those briefs.

The confidentiality waiver was entered on October 4, 2013. (Docket Item No. 80). On October 18, 2013, heavily redacted copies of the briefs filed by the Essar entities in the *Great Lakes* litigation were provided to Maggard's counsel. After Maggard's counsel complained, defendants produced portions of the unredacted briefs under seal. (Docket Item No. 115 *Sealed*). After reviewing the redacted brief and portions of the unredacted brief side by side, I find that at least some of the portions that were originally redacted contain information that "relate[s] to the Essar entities' corporate structure and the relationship between the entities." For instance, some of the redacted information contains a listing of Essar Global Limited's "Principal subsidiaries." This listing includes each subsidiary's name, the country of incorporation, the date considered for parent subsidiary relationship, the percentage voting held by the group and the economic percentage held by the group. (Docket Item No. 115-1 *Sealed*). This listing includes Minnesota Steel Industries, LLC, the predecessor to Essar Steel Minnesota, LLC, a defendant in this case. As Maggard argues in his reply brief in support of his Motion for Sanctions, another example of the defendants' violation of the court's order is the

identification of the financial contribution by Essar Steel Algoma to the "Group," which includes other defendants in this case. (Docket Item No. 115-3 *Sealed*). Also, as Maggard argues, the "Contingencies and commitments" section of Essar Global Ltd.'s 2008 Financial Statements admits that "corporate guarantees" were given by the Group in 2007 and 2008, although the defendants have vehemently denied that the Group exists as a corporate entity. (Docket Item No. 115-4 *Sealed*). Additionally, under a section of the 2008 Financial Statements titled "Related party transactions," two companies are identified as having "significant influence over the Group." (Docket Item No. 115-5 *Sealed*). Lastly, the court notes an agreement between Essar Steel Minnesota, LLC and Essar Global Ltd., in which Essar Global Ltd. agreed to be jointly and severally liable for certain contractual obligations of Essar Steel Minnesota, LLC. (Docket Item No. 115-6 *Sealed*).

I find that all of these instances illustrate that the defendants redacted information that relates to the Essar entities' corporate structure and the relationship between the entities, in contravention of this court's order. Given this violation, in combination with the defendants' earlier unwillingness to produce even a single response to interrogatories or produce a single document in response to requests for production prior to an order to compel, I find that sanctions are appropriate, and I order the defendants, not defense counsel, to pay the fees and costs associated with the filing of this Motion for Sanctions. To that end, the plaintiff has 14 days from the date of entry of this Memorandum Order to submit an affidavit setting out these amounts to the court. Defense counsel may respond to the affidavit within seven days of its filing.

*C. Motion to Quash*

Rewant Ruia has filed a Motion to Quash, (Docket Item No. 90), in response to a subpoena duces tecum that Maggard has issued to Stanford University for his educational records. More specifically, he seeks all of the materials filed in support of Rewant Ruia's application to the Stanford Graduate School of Business. In particular, the subpoena states that it seeks "any and all records, documents and things concerning Mr. Rewant R. Ruia." It defines the term "any and all records, documents and things" to include, but not be limited to:

> All admissions-related materials submitted within the last five (5) years to the Stanford Graduate School of Business by or on behalf of Mr. Rewant R. Ruia, including but not limited to application(s), admissions essay(s), letter(s) of recommendation and any other materials/documents. This may include, but is not limited to letters or other materials submitted by Rewant Ruia, Prashant Ruia, Madhu Vuppuluri, and The Honorable Steven L. Beshear, Governor of Kentucky.

(Docket Item No. 91-4). In the Motion to Quash, Rewant Ruia argues that the subpoena seeks information irrelevant to this action and, therefore, imposes an undue burden and should be quashed. Additionally, he argues that the information sought does not meet the heavy burden established under the Family Educational Rights and Privacy Act, ("FERPA"), 20 U.S.C. § 1232g(b)(2), for the release of educational records. FERPA seeks to protect educational records or personally identifiable information from improper disclosure. *See Virgin Records Am., Inc. v. Does*, 2007 WL 3145838, at *2 (E.D. Tenn. Oct. 24, 2007). That statute states, in relevant part, as follows:

> …No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory

> information … unless … such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency. …

20 U.S.C.A. § 1232g(b)(2)(B) (West 2010 & Supp. 2013).

In *Rios v. Read*, 73 F.R.D. 589 (E.D.N.Y. 1977), the United States District Court for the Eastern District of New York, relying on the legislative history of the statute, held that there is a significantly heavier burden on a party seeking access to student records to justify disclosure than exists with respect to discovery of other kinds of information, such as business records. The *Rios* court found that "privacy violations are no less objectionable simply because release of the records is obtained pursuant to judicial approval unless, before approval is given, the party seeking disclosure is required to demonstrate a genuine need for the information that outweighs the privacy interest of the students." 73 F.R.D. at 599. *Rios*, however, is not binding precedent on this court, and there are no Fourth Circuit cases upholding this finding. I find doubtful that the Fourth Circuit, if called upon to do so, would find the existence of such a heightened burden on a party seeking student records. I find so because the statue itself is silent regarding any such burden. Had the legislature intended for there to be such a burden, it simply could have explicitly placed it within the body of the statute. Instead, it chose not to do so. That being the case, I find that Maggard has no burden to show that he has a "genuine need" for the information sought that outweighs Rewant Ruia's privacy interest. Instead, under FERPA, the only requirement is that the student be notified of the subpoena in advance of compliance therewith by the educational institution. That has been accomplished here. All of this being the case, I find that Maggard

need make only the same showing as for any other discovery – that the information sought is relevant and not privileged.

There's no allegation that the information sought is privileged. I further find that it is relevant because the information requested by the subpoena addresses the issue of Rewant Ruia's and Essar Global's involvement with the Trinity Coal acquisition. Maggard alleges he was retained by the defendants to act as their "Coal Consultant" and that he brokered the deal that resulted in Essar's acquisition of Trinity Coal. He alleges that he was retained by, and acted on behalf of, all six of the defendants, and, as such, the role of each defendant in the Trinity Coal acquisition is relevant in this case, as is the role played by each individual within the Essar organization with whom Maggard dealt, including Rewant Ruia. Essar Global denies that Rewant Ruia has ever been employed or served as officer or director. However, Maggard claims that he intends to refute this contention and present evidence that Rewant Ruia, acting on behalf of Essar Global, was involved in the Trinity Coal acquisition and interacted with Maggard in that capacity. Therefore, information relating to Rewant Ruia's relationship with Essar Global and his involvement in the Trinity Coal acquisition is relevant to this case.

Next, Maggard contends that the documents requested from Stanford squarely address these issues. He states that he has reason to believe that Rewant Ruia highlighted his involvement on behalf of Essar Global in the Trinity Coal acquisition in his application to Stanford. He further states that he believes that the Governor of Kentucky, Steven L. Beshear, wrote a letter of recommendation to Stanford on Rewant Ruia's behalf, praising his business acumen and the economic benefits to Kentucky as a result of the Trinity Coal acquisition. Maggard further

states that Vuppuluri and one or more members of the Ruia family wrote similar letters of recommendation on Rewant's behalf.

The court notes that the subpoena, as written, could include information such as Rewant Ruia's test scores or previous school transcripts. However, during the November 14, 2013, telephone conference call, plaintiff's counsel conceded that he was not seeking any such information. Instead, he confined his interest to obtaining only letters of recommendation and Rewant Ruia's essays or letters seeking admission.

For all of the above-stated reasons, I will deny the Motion to Quash insofar as it seeks any materials completed by Rewant Ruia himself, such as applications and essays, as well as any recommendation letters submitted on his behalf. I will grant the Motion to Quash insofar as it seeks any materials such as test scores and previous school transcripts.

The Clerk is directed to send a certified copy of this Memorandum Order to all counsel of record.

ENTERED: November 25, 2013.

### Notice to Parties

Notice is hereby given to the parties of the provisions of Federal Rules of Civil Procedure Rule 72:

…A party may serve and file objections to [this Order] within

> 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Failure to file timely written objections to this Memorandum Order within 14 days could waive appellate review.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE