# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **SYLVAIN A. MAGGARD, ETC.,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:12CV00031 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **ESSAR GLOBAL LIMITED, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*John R. Owen, Julie S. Palmer, and Lester C. Brock, III, Harman, Claytor, Corrigan & Wellman, Richmond, Virginia, for Plaintiff; James F. Neale and Meghan Cloud, McGuireWoods LLP, Charlottesville, Virginia, for Defendants.*

In this diversity action, the plaintiff, Sylvain A. Maggard ("Maggard"), has filed suit against the defendants, an international conglomerate and its related entities (herein collectively called "Essar"), for breach of contract regarding a fee or commission that he claims he is owed following his assistance with Essar's acquisition of a coal mining company, Trinity Coal Corporation. Essar agreed that it hired Maggard, but contends that his role was only that of a consultant. The plaintiff has disclosed that he intends to call at trial an expert witness, Michael Quillen ("Quillen"), a coal industry consultant, to testify regarding the role and compensation of merger and acquisition advisors in the coal industry. The defendants have moved to exclude Quillen from testifying on the grounds that his

opinion testimony is "unreliable, unhelpful, and without foundation." (Defs.' Mot. to Exclude 1, ECF No. 143.)

The defendants' motion has been fully briefed and is ripe for decision. For the reasons that follow, I will deny the defendants' motion.

I.

The basic facts of this case have been detailed by this court in an earlier opinion denying Essar's Motion for Summary Judgment. *See Maggard v. Essar Global Ltd.*, 16 F. Supp. 3d 676 (W.D. Va. 2014). Because I write primarily for the parties, I do not restate the basic facts of this case here.

Pursuant to the defendants' brief in support of their Motion to Exclude, the defendants contend that "Quillen's opinions should be excluded because they are not the result of a sound methodology and they will be of no assistance to the fact-finder in understanding the evidence or determining a fact genuinely at issue." (Mem. in Supp. of Defs.' Mot. to Exclude 3, ECF No. 144.) Regarding the former, the defendants argue that Quillen's opinions are based on no methodology, because his opinion that the plaintiff is entitled to a fee or commission has remained unchanged "despite radically shifting factual underpinnings" from the time of his expert report to his deposition. (*Id.*) Regarding the latter, the defendants' contend that Quillen has no knowledge of the ultimate issue of whether there was an

agreement between Maggard and Essar, which will be adequately addressed through the testimony of the parties and decided by the jury.

In this context, the case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the basic analytical framework for determining the admissibility of expert testimony. Under *Daubert*, the court acts as a "gatekeeper" by ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. "[T]he trial judge's general 'gatekeeping' obligation . . . applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). The trial court's inquiry into admissibility is "a flexible one" and the court's analysis will "depend[] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *See id.* at 150 (internal quotation marks and citation omitted). More generally, cases after *Daubert* have shown that "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note.

The principles of *Daubert* and its progeny are reflected in the Federal Rules of Evidence, which allow expert evidence under certain circumstances:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

-3-

Case 2:12-cv-00031-JPJ-PMS   Document 166   Filed 04/01/15   Page 3 of 11   Pageid#: 2917

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Based on the defendants' brief in support of the Motion to Exclude, their position appears to address each requirement of Rule 702. In short, the defendants contend that Quillen's testimony is inadmissible because his expert opinion (1) is based on unreliable facts; (2) is not the product of reliable methods that have been reliably applied to the facts of this case; and (3) will not help a jury understand the evidence or determine a fact at issue in this case. I will address each of these arguments in turn.

A. Factual Basis of the Expert's Opinion.

The defendants assert that Quillen's opinion in his expert report — that the plaintiff is owed a fee or commission based on his introduction of the buyer and seller — is based on unreliable facts. In short, the defendants assert that the plaintiff did not introduce the buyer and seller, rather a third-party to this litigation

provided an initial introduction. The defendants' position, however, is derived from a differing interpretation or framing of a disputed factual issue.

In denying Essar's motion for summary judgment, I previously noted that a factual dispute remained "as to whether Maggard's actions on behalf of Essar satisfied the terms of the [parties'] alleged oral agreement." *Maggard*, 16 F. Supp. 3d at 682. Specifically, the parties dispute the meaning of the phrase "any opportunity that Maggard presented that led to investment" contained within the alleged oral commission agreement. *Id.* at 683. Essar's position is that this language "required [Maggard] to be the first presenter or 'finder' of a given opportunity to be eligible for a commission." *Id.* Essar contends that a third party to this litigation first presented the coal mine opportunity that resulted in Essar's investment. In contrast, Maggard contends that this alleged contract provision required an initiation of the ultimate transaction. In essence, the defendants' challenge to Quillen's factual basis for his opinion is simply a continuation of this factual dispute.

> As stated in the Advisory Committee Notes to Rule 702:
>
> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

Fed. R. Evid. 702 advisory committee's note. The reality is that "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (quoting *United States v. 14.38 Acres*, 80 F.3d 1074, 1078 (5th Cir. 1996)). As noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596. Stated differently, the jury must decide the disputed facts in this case, and if it disagrees with Quillen's interpretation of the facts, that is an issue of the weight and impeachability of his testimony, and not its admissibility. *See Siring v. Or. State Bd. of Higher Educ.*, 927 F. Supp. 2d 1069, 1073 (D. Or. 2013).

B. Reliability of the Expert's Methodology.

An extension of the defendants' argument is their assertion that Quillen's methodology is flawed because of the "ease with which [he] has adapted [his] opinion to fit his developing understanding of the record." (Mem. in Supp. of Defs.' Mot. to Exclude 16, ECF No. 144.) The defendants contend that this is an indication of the unreliability of Quillen's opinion. More specifically, the defendants' argue that the factual record in this case has developed to show that a third party initiated the transaction. The defendants assert that Quillen adapted his opinion in response to this development to refocus and emphasize the significance

of post-introduction activities by an advisor — like those allegedly provided by the plaintiff.

Under Rule 702, an expert's "testimony [must be] the product of reliable principles and methods" that "the expert has reliably applied . . . to the facts of the case" to be admissible. Fed. R. Evid. 702(c)-(d). In this case, Quillen is serving as an experiential expert, not a scientific or technical expert. As stated by the Fourth Circuit, "there exist meaningful differences in how reliability must be examined with respect to expert testimony that is primarily experiential in nature as opposed to scientific." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007). For example, experiential expert testimony does not rely on any scientific evidence that is "characterized by 'its falsifiability, or refutability, or testability.'" *Id.* (quoting *Daubert*, 509 U.S. at 593). Therefore, the "district court's task in examining the reliability of experiential expert testimony is therefore somewhat more opaque." *Wilson*, 484 F.3d at 274. "[T]he district court must nonetheless require an experiential witness to 'explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts.'" *Id.* (quoting Fed. R. Evid. 702 advisory committee's notes).

As an initial matter, I reiterate that this issue is largely an extension of a dispute of fact between the parties. I also do not find that the defendants have

definitively established that Quillen's opinion substantively changed based on the components of the record identified by the defendants in support of their motion. At a minimum, Quillen states in the first heading of the analysis section of his report that "[i]n the coalfield [Mergers and Acquisitions] Industry, when an agent who is under contract to represent either the buyer or the seller *introduces the parties and arranges for the parties to engage in serious negotiations, ultimately leading to a closed deal*, the agent qualifies for a Success Fee." (Mem. in Supp. of Defs.' Mot. to Exclude Ex. A, at 13, ECF No. 144-1 (emphasis added).) Similarly, Quillen stated in his deposition testimony that the advisor in this context would be the party "who brought the parties into negotiations, who followed through on the meetings, and who stayed with the deal until closure." (*Id.* Ex. B, at 67, ECF No. 144-2.) This statement and others in Quillen's report and deposition may be reasonably interpreted to imply that an advisor in some contexts — like this one — may also be the party who cultivates and fosters the conclusion of a deal.

    As a result, I do not find it appropriate to further evaluate the precise degree of consistency associated with Quillen's opinion for purposes of admissibility. *See Sanchez v. Bos. Scientific Corp.*, No. 2:12-cv-05762, 2014 WL 4851989, at *21 (S.D. W. Va. Sept. 29, 2014) (refusing to evaluate the uniformity of an expert's report and deposition, on the ground any inconsistency would not mandate exclusion of the expert). It is sufficient for purposes of the defendants' Motion to

-8-

Exclude to note that Quillen has sufficiently established how his extensive work experience in coal mine operations, acquisitions, and consulting has provided the basis for his opinion. Furthermore, the defendants have failed to show that Quillen has not reliably applied his knowledge and experience to disputed issues of fact to develop his expert opinion.

### C. Helpfulness to the Trier of Fact.

The defendants contend that Quillen's testimony will be unhelpful to a jury in this case. The defendants primary argument is that the ultimate issue of whether the plaintiff is entitled to a commission, or its amount, is dependent on whether an oral contract existed, and, if so, its terms. Regarding this issue, the defendants assert that Quillen has no personal knowledge of the parties' alleged agreement, and is no more qualified than the jury to make the determination. The defendants also argue that Quillen's testimony will be of no assistance to the jury regarding the plaintiff's alternative theory of recovery — quantum meruit — because this issue will be adequately addressed through other testimony and evidence.

Rule 702 permits expert witness testimony if the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see also Daubert*, 509 U.S. at 592 (concluding that expert testimony "requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility"). As stated by the Fourth Circuit, "Rule 702 is

-9-

Case 2:12-cv-00031-JPJ-PMS   Document 166   Filed 04/01/15   Page 9 of 11   Pageid#: 2923

broadly interpreted, and helpfulness to the trier of fact is its 'touchstone.' . . . Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (citations omitted). Issues associated with the admission of expert testimony are "encountered only when the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." *Id.* (internal quotation marks and citation omitted).

First, the parties to this litigation propose very different theories regarding which person or entity served as the advisor to the transaction at issue in this case. On the one hand, the plaintiff asserts he served as Essar's deal-maker. On the other, the defendants assert that another party served in this role and was "paid for its services as [a Mergers and Acquisitions] advisor on the Trinity deal." (Defs.' Reply to Pl.'s Mem. in Opp'n 6, ECF No. 159.) In this context, I believe that a jury may be assisted by expert testimony regarding this issue. Put simply, I do not believe that the role or activities of a merger and acquisition advisor in the coal industry is within the "everyday knowledge and experience of a lay juror." *Kopf*, 993 F.2d at 377. For this reason, Quillen's testimony may be of assistance to a jury in interpreting the parties' evidence and determining whether the parties entered into an oral contract and, if so, its terms.

Similarly, Quillen's testimony may be of assistance to a jury regarding the plaintiff's alternative theory of recovery — quantum meruit — assuming that issue is submitted to the jury. In denying the defendants' motion for summary judgment, I noted that the plaintiff's alternative theory is appropriate "in the event that a jury finds that there was no express agreement or that an express agreement did not address the subject matter of relevance here." *Maggard*, 16 F. Supp. 3d at 687. If the jury reaches this issue, then Quillen's testimony regarding the value of services provided by the plaintiff — based on testimony regarding norms for merger and acquisition advisors in the coal industry — may be considered by the jury in deciding this issue. 32A C.J.S. Evidence § 989 (2015) ("Expert testimony as to the value of services rendered is not conclusive or binding, even though uncontradicted, and is not necessary. However, such testimony cannot be arbitrarily disregarded, and the weight thereof is for the trier of the facts, who may exercise his own judgment on the subject, and may follow expert opinions if not plainly at variance with the facts." (footnotes omitted).)

II.

For these reasons, it is **ORDERED** that Defendants' Motion to Exclude the Testimony of Michael Quillen (ECF No. 143) is DENIED.

ENTER: April 1, 2015

/s/ James P. Jones
United States District Judge

-11-

Case 2:12-cv-00031-JPJ-PMS   Document 166   Filed 04/01/15   Page 11 of 11   Pageid#: 2925